## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

In re:

**ELAINE M. COLE**
**Debtor**

**CHAPTER 7**

**CASE NO. 21-21071 (JJT)**

**JANUARY 3, 2022**

### DEBTOR'S RESPONSE TO TRUSTEE'S OBJECTIONS TO
### DEBTOR'S CLAIM OF EXEMPTION IN REAL PROPERTY

The Debtor, Elaine M. Cole ("Debtor" or "Ms. Cole"), by and through her undersigned counsel, respectfully presents her Response to the Trustee's Objection to Debtor's Claim of Exemption in Real Property (ECF 16) (the "Objection"). In support of this Response, Ms. Cole respectfully states:

**Factual History**

1.  Ms. Cole is 80 years old.

2.  In September 1995, Ms. Cole acquired ownership of real property located at 17 Burrows Street in Mystic, Connecticut (the "Property").

3.  Ms. Cole lived at the Property from 1995 until the end of November 2021, when she moved into subsidized elderly housing.

4.  On November 22, 2021, Ms. Cole commenced the instant Chapter 7 case. Anthony S. Novak was appointed as the Chapter 7 Trustee (the "Trustee").

5.  Ms. Cole has valued the Property at $589,000.

6.  Ms. Cole has claimed an exemption in the amount of $250,000 pursuant to Conn. Gen. Stat. § 52-352b(21).

7.  On December 2, 2021, the Trustee filed the Trustee's Objection to Debtor's

Claim of Exemption in Real Property (ECF 16) (the "Objection").

8.      As the basis of the Objection, the Trustee states that "although the Chapter 7 case was commenced after the effective date of the State Statute increasing the homestead exemption from $75,000.00 to $250,000.00, the claims of the unsecured creditors arose prior to the effective date in the change in the Statute. <u>Gernat v. Belford</u> 192 BR 602 (Connecticut 1996)."

9.      On December 27, 2021, the Trustee filed a document styled as "Trustee's Objection to Debtor's Amended Claim of Exemption in Real Property" (ECF 54) (the Amended Objection").

10.      In addition to the ground cited by the Trustee in his Objection, the Trustee now states an objection to Ms. Cole's claim of exemption "in its entirety, as the Trustee, upon information and belief, contends that 17 Burrows Street, Mystic, CT was not the Debtor's homestead on the date of the Chapter 7 filing as it was not owner-occupied real property used as the Debtor's primary residence."[1]

11.      The Property was sold to a third-party buyer on December 23, 2021.

## Legal Analysis

### a.      Law Regarding the Connecticut Homestead Exemption

#### i.      The 1993 Homestead Exemption

Prior to 1993, Connecticut state law did not provide an exemption for equity in an owner's home.

In 1993, Connecticut created a new homestead exemption in Connecticut's exempt property statute, Conn. Gen. Stat. § 52-352b.  Its subsection (t) originally provided

---

[1] Ms. Cole reserves the right to provide an additional response to the claims made in the Amended Objection only last week.

a protection for "The homestead of the exemptioner to the value of seventy-five thousand dollars, provided value shall be determined as of the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it."

Public Act 93-301 was the enabling act for the publication of Conn. Gen. Stat. § 52-352b. Its Sec. 3 states: "This act shall take effect October 1, 1993, and shall be applicable to any lien for any obligation or claim arising on or after said date."

Shortly after its effective date, Connecticut bankruptcy debtors unsuccessfully attempted to claim exemptions in their homes against debts incurred prior to October 1, 1993.

In In re Morzella, 171 B.R. 485 (Bankr. D. Conn. 1994), Judge Krechevsky sustained a Chapter 7 trustee's exemption to the debtor's use of the new homestead exemption found in § 52-352b(t). The objecting creditor had a claim from an automobile accident which accrued prior to the statute's effective date.

The Morzella Court reviewed the Connecticut Public Act 93-301, the new statutory language and the definitions for "exempt" and "homestead" found in Conn. Gen. Stat. 52-352a(c) and (e) to determine:

> Read together, the homestead exemption seems to provide that a creditor may not subject to any form of process or court order, for the purpose of debt collection, the residence of an exemptioner to the value of $ 75,000, net of existing statutory or consensual liens.
>
> The Act provides that it "shall take effect October 1, 1993, and shall be applicable to any lien for any obligation or claim arising on or after said date." 1993 Conn. Pub. Act 301, § 3. The most reasonable interpretation of this section is that the Act applies to any prejudgment attachment, see Conn. Gen. Stat. § 52-278b, or judgment lien, see id. § 52-380 a, placed on the exemptioner's residence for the purpose of collecting a debt incurred as a result of an obligation or claim arising on or after October 1, 1993.
>
> Legislative history generally supports this interpretation of the exemption's

application. Representative Holbrook, who introduced the legislation, explained in legislative hearings on the Act that "we are not talking about anything here that is retroactive. It takes effect with any unsecured loans that occur after [October 1, 1993] . . . ." Conn. Gen. Assembly House Proceedings 1993, Vol. 36, Part 30, [hereinafter House Proceedings] at 10824, 10855-56.

Id. at 486-487.

Judge Shiff mirrored the Morzella analysis in In re Duda, 182 B.R. 662 (Bankr. D. Conn. 1995) aff'd Gernat v. Belford, 192 B.R. 601 (D. Conn. 1996) aff'd 98 F.3d 729 (2d Cir. 1996).

Under Connecticut law a statutory enactment affecting substantive rights, as Pub. Act 93-301 indisputably does, is presumed to have only prospective effect in the absence of a clear and unequivocal expression of a contrary legislative intent. Conn. Gen. Stat. Ann. § 55-3 (West 1985); *In re Judicial Inquiry No. 85-01,* 221 Conn. 625, 632, 605 A.2d 545 (1992); *Miano v. Thorne,* 218 Conn. 170, 175, 588 A.2d 189 (1991). The plain language of Pub. Act 93-301 supports a prospective application only. *See Centerbank v. Associated Risk Servs., Inc.,* 1994 Conn. Super. LEXIS 335, 1994 WL 51183 (Conn. Sup. Ct., Feb. 7, 1994); *L. Suzio Asphalt Co., Inc. v. Ferreira Constr. Corp.,* 1993 Conn. Super. LEXIS 2750, 1993 WL 448441 (Conn. Sup. Ct., Oct. 19, 1993).
.
In re Duda, 182 B.R. 662, 665 (D. Conn. 1995).

The Duda Court found the plain language of the Public Act to be clear - "it is apparent that the homestead exemption was *effective* on October 1, 1993, but only as to claims arising on or after that date." Id. at 667.   As this language was plain and unambiguous, there was no need to look at legislative history to interpret it. Id. at 668. If somehow more was needed to determine the statute's intent, the statement from Representative Holbrook, as quoted in Morzella, made clear that the statute was not to be retroactive. Id.

Duda recognized that the Public Act "was intended to provide relief to homeowners in a troubled economy and to bring Connecticut law in line with that of other states which generally provide some homestead exemption or tenancy by the entirety protection."

<u>Duda</u>, 182 B.R. at 668-669.  The Act would protect homeowners from foreclosure "to the extent of post-Act obligations which ripen into judgment liens. The legislative statements relied upon by the debtors should be read to refer to that more limited, but nevertheless significant, relief…." <u>Id</u>. at 669.

In rejecting the debtors' construction of the exemption, the <u>Duda</u> Court identified inconsistencies with the legislative history and policy.  Specifically, it stated:

> **If that legislative body wished to provide immediate relief to debtors at the expense of existing creditors, why would it not have simply provided an effective date and eliminated the second clause of Section 3, or even expressly stated its intent that existing claims would be subject to the exemption?** … There is no evidence of a legislative intent to encourage bankruptcy filings by making the exemption available as to existing claims in bankruptcy but not in a state court foreclosure proceeding….
>
> Finally, I note that, according to the legislative history, Connecticut was one of only six states with no homestead exemption and of those one of two that did not recognize a tenancy by the entirety. The Act did not merely increase an existing exemption, it created that protection in the form of a very substantial homestead exemption. It is therefore not surprising that the General Assembly sought to ease the impact of the Act on lenders who had extended credit in reliance on settled law which provided no homestead protection.
>
> <u>Id</u>. (emphasis added).

<u>Gernant v. Belford</u>, 192 B.R. 601 (D. Conn. 1996) <u>aff'd</u> 98 F.3d 729 (2d Cir. 1996), affirmed the <u>Duda</u> ruling.

<u>Gernant</u> further found it appropriate to give the new provision only prospective effect pursuant to Conn. Gen. Stat. § 55-3, as the newly created homestead exemption was a substantive change in the law.

> Further, giving this exemption prospective effect only is in keeping with the rule of statutory construction embodied in C.G.S.A. § 55-3 (1995), that "no provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." This statute codifies a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only,

absent a clear and unequivocal expression of a contrary legislative intent. *Miano v. Thorne,* 218 Conn. 170, 175, 588 A.2d 189, 192 (1991); *Darak v. Darak,* 210 Conn. 462, 467, 556 A.2d 145, 148 (1989); *Little v. Ives,* 158 Conn. 452, 456, 262 A.2d 174, 176 (1969) (statutes affecting substantive rights are presumed to be intended to operate prospectively only and to furnish a rule for future cases only unless they contain language unequivocally and certainly embracing past transaction); *Anderson v. Schieffer,* 35 Conn. App. 31, 39, 645 A.2d 549, 554 (1994).

Id. at 604.

### ii.    The 2021 Amendment

The 2021 Public Act 21-161 amended the Connecticut homestead exemption for the first time, increasing it to $250,000.  Its Sec. 1 states in part:  "Section 52-352b of the general statutes is repealed and the following is substituted in lieu thereof (Effective October 1, 2021)…."  Unlike the 1993 Act, there is no reference made to its applicability in the 2021 Act.

Prior to its enactment, Connecticut residents testified about the long-overdue need for the increase. See Testimony, attached as Exhibit A.

Johnny Armaos, a resident of Ledyard, Connecticut, testified:

Sometimes through no fault of our own we may fall on hard times and especially during these difficult times where working class folks and small business entrepreneurs alike are struggling to meet their debt obligations, I think it's important we try to place adequate protections on people's homes and motor vehicles in case bankruptcy is their only option.

Loraine Martinez Bellamy, CT Co-Chair of the National Association of Consumer Advocates (NACA) stated:

**We support H.B. 6466, which would update Connecticut's homestead exemption to fulfill its purpose of protecting a modest home and car from creditors so that a debt does not leave families destitute and without shelter or transportation.**
Homestead exemptions protect essential assets such as a car, a home, or tools of the trade from execution by judgment creditors, but Connecticut's are out of date and out of step with many states. Connecticut's $75,000 homestead

exemption for homes and $3,500 motor vehicles have both received "D" ratings from the National Consumer Law Center. 37 states have higher motor vehicle exemptions, and 21 states have higher homestead exemptions for homes. For example, Massachusetts protects homes valued at $500,000, Minnesota protects $420,000, and Montana protects $250,000.

Connecticut's low homestead exemptions put families at risk of losing their homes or family car due to debt. Connecticut's median home value is around $255,000. A homestead exemption for real property of just $75,000 means the vast majority of homes in our state, even modest homes, are not adequately protected from creditors. Similarly, the $3,500 exemption for cars protects few cars since it is less than a quarter of the average value of a modest used car.

H.B. 6466 would increase the real property exemption to $250,000 and the motor vehicle exemption to $7,000. This would more closely align our homestead exemptions with the actual value of family cars and homes in our state, and with the exemptions in other states. We urge the passage of H.B. 6466.

Attorney Susan M. Williams testified:

Connecticut has one of the highest median incomes in the country and being in the northeast we all know how expensive it is to purchase real estate here. Valuations of homes have increased tremendously since 1993 and the homestead should be updated to reflect that increase as well. Our bordering states Massachusetts and Rhode Island have both increased their homestead exemptions to $500,000.00. This legislation affects hard working homeowners that have been loyal to the State of Connecticut continuing to live here and contribute to Connecticut's economy, paying real estate taxes and acquiring equity in their homes and sometimes actually paying off the mortgage.

It is a difficult decision to file for bankruptcy and always a last resort. However, the United States Bankruptcy Code was enacted to allow debtors an opportunity to have a fresh start and discharge liabilities. A bankruptcy is typically utilized by debtors who fall on hard times for myriad of reasons which are typically unavoidable unforeseen circumstances such as divorce, illness, job loss and now pandemics.

If a homeowner has more than $75,000 of equity in their home then Connecticut is denying these hard working residents the opportunity of a fresh start because there is too much equity in their home. Connecticut is saying you worked too hard and stayed in Connecticut too long because the State of Connecticut will not protect that equity you worked so long and hard to achieve.

On April 13, 2021, the Judiciary Committee published a Joint Favorable Report "solely for the purposes of information, summarization and explanation and does not represent the intent of the General Assembly or either chamber thereof for any purpose."

<u>See</u> Report, attached as Exhibit B.  The reasons for the Bill are identified as follows:

> Currently the value of personal and real property that is exempt from creditors in a bankruptcy proceeding is lower than that of many other states, and most of the surrounding states. This difference may cause residents to leave the state if they need to file for bankruptcy or lose their primary residence. The proposed legislation is an effort to increase the value of certain personal and real property that shall be exempt from a judgment creditor during bankruptcy as well as the cash surrender value of a life insurance policy.

The Connecticut Office of Legislative Research (OLR) published Bill Analysis on

April 22, 2021 summarizes the modification of the homestead exemption as follows:

> 3. increasing the homestead exemption to $250,000, instead of $75,000, or, for money judgments for hospital services, $125,000, as under current law; and

> 4. limiting the homestead exemption to $75,000 for money judgements for claims of sexual abuse or exploitation of a minor, sexual assault, or other willful, wanton or reckless misconduct.

<u>See</u> Bill Analysis, attached as Exhibit C.

On May 18, 2021, the House voted on the amendment.  144 Representatives voted

yes, 0 voted no, and 7 were absent.  On June 9, 2021, all 36 Senators voted yes.  The

amendment became effective on October 1, 2021.

> **b.**     **The Increase to the Connecticut Homestead Exemption Should be Applied Retroactively.**

> **i.**     **General Law About Procedural and Substantive Statutes.**

Connecticut courts have identified a general rule for whether a new statute is

applied prospectively or retrospectively:  If a statute is substantive, it generally is applied

prospectively, while a procedural statute is applied retroactively.

However, its application is not simple at all.

While there is no precise definition of substantive or procedural law, the general

understanding is that a substantive law creates, defines and regulates rights and a

procedural law sets forth the methods for enforcing the rights or obtaining redress. D'Eramo v. Smith, 273 Conn. 610, 621 (2005). Procedural statutes leave a preexisting scheme intact. Inv. Assocs. v. Summit Assocs., 309 Conn. 840, 868 (2013).

As recognized above in Gernant, if a statute is deemed substantive, it is controlled by Conn. Gen. Stat. § 55-3. State v. Nathaniel S., 323 Conn. 290, 294 (2016). § 55-3 is entitled "Limitation on effect of certain acts" and states in full: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect."

"Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute." D'Eramo, 273 Conn. at 620.

> [I]n the absence of any clear expression of legislative intent to the contrary [changes to statutes that create or impose substantive new obligations are therefore] presumptively prospective…. By contrast, [p]rocedural statutes have been traditionally viewed as affecting remedies, not substantive rights, and therefore leave the preexisting scheme intact. . . . [Accordingly] we have presumed that procedural . . . statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary . . . . We have noted, however, that a procedural statute will not be applied retroactively if considerations of good sense and justice dictate that it not be so applied….
>
> Nathaniel S., 323 Conn. at 295 (citations, internal quotations and footnotes omitted).

Some principles of statutory construction require courts to construe statutes in manners that will not thwart the legislature's intended purpose or lead to absurd results. Hall v. Gilbert & Bennett Mfg. Co., 241 Conn. 282, 302 (1997). Courts "must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. *Peck* v. *Jacquemin*, 196 Conn. 53, 63-64, 491 A.2d 1043 (1985). If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable. *State* v. *Uretek, Inc.*, 207

Conn. 706, 719, 543 A.2d 709 (1988); *State* v. *Parmalee*, 197 Conn. 158, 165, 496 A.2d 186 (1985)." Id. at 303.

The rule of construction to apply substantive legislation prospectively unless the legislature provides a clear intention otherwise "is rooted in the notion that it would be unfair to impose a substantive amendment that changes the grounds upon which an action may be maintained on parties who have already transacted or who are already committed to litigation. See *Lavieri* v. *Ulysses*, 149 Conn. 396, 401, 180 A.2d 632 (1962); *E.M. Loew's Enterprises, Inc*. v. *International Alliance*, 127 Conn. 415, 418, 17 A.2d 525 (1941). In civil cases, however, unless considerations of good sense and justice dictate otherwise, it is presumed that procedural statutes will be applied retrospectively. See *State* v. *Paradise*, 189 Conn. 346, 351, 456 A.2d 305 (1983); *Lavieri* v. *Ulysses*, supra. Procedural statutes have been traditionally viewed as affecting remedies, not substantive rights, and therefore leave the preexisting scheme intact." Moore v. McNamara, 201 Conn. 16, 22 (1986).

### ii.     The Amendment is Procedural and Should be Applied Retroactively.

The Morzella and Duda Courts recognized that the 1993 *creation* of the Connecticut homestead exemption in Conn. Gen. Stat. § 52-352b was a substantive change in law, establishing a new protection for a homeowner against judgment creditors, who may have extended credit in reliance on settled law which had provided no homestead protection.  The 2021 increase in the amount of the exemption leaves the preexisting exemption scheme intact and merely changes the amount of the protection available to the debtor.

In Davis v. Forman Sch., 54 Conn. App. 841, 856 (1999), an amendment adding

a penalty to a worker's compensation statute was deemed procedural.  The change in statute did not create the employee's right to receive a payment or the employer's duty to make the payment within ten days of reaching an agreement; it merely introduced a penalty provision for a late payment.

The Court in <u>Maghfour v. City of Waterbury</u>, 340 Conn. 41 (2021) analyzed whether an amendment to Conn. Gen. Stat. § 7-464 was substantive or procedural. The amendment added new subsections, for the first time allowing a self-insured city, town or borough to file a lien for medical expenses it paid out for employee injuries against judgments or settlements obtained by its employees based on third party negligence or recklessness. <u>Id</u>. at 43-44.  The statute was silent on whether it was to be applied retroactively or prospectively. <u>Id</u>. at 48.

The <u>Maghfour</u> Court found the amendment to be substantive, as it "created a new right for self-insured municipalities and limited the rights of their employees." <u>Id</u>. at 49.

As part of its analysis, the Court extensively quoted <u>Shannon v. Commissioner of Housing</u>, 322 Conn. 191 (2016):

> [A] statute does not operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment … or upsets expectations based in prior law. *Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment….* In other words, a law has retroactive effect when it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed…. [T]he conclusion that a particular rule operates retroactively comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.
>
> <u>Id</u>. at 50 (internal quotations omitted) <u>quoting</u> <u>Shannon</u>, 322 Conn. at 204-206 (emphasis in original).

When an amendment is not directed to a right itself, but to the remedy, it is

generally found to be a distinctly procedural matter.  Davis v. Forman Sch., 54 Conn. App. 841, 855 (1999).  The change to the homestead exemption increases the debtor's existing protections in her home's equity.  It does not create a new right or impose a new obligation.  This change is procedural and Ms. Cole should be allowed to claim the full $250,000 exemption.

### iii.    Alternatively, if the Amendment is Deemed Substantive, it Should Still be Applied Retroactively, as it is Remedial.

A remedial statement deserves a generous construction that implements its purpose. Cotto v. United Techs. Corp., 251 Conn. 1, 8-9 (1999).  The amendment was remedial.

As described above, the long overdue amendment was made to allow greater protections for homeowners, similar to other such protections found in neighboring states.

The legislative intent in 2021 was far more silent than that found in the record leading up to the 1993 enactment.  There are no statements on record explaining that the amendment would not take effect retroactively and no stated limitation as to the debts it reaches.

Public Act 93-301 § 3 explicitly stated:  "This act "shall take effect October 1, 1993 and shall be applicable to any lien for any obligation or claim arising on or after said date." There is no similar language found in P.A. 21-161, or otherwise.

On that point, in In re Duda, 182 B.R. 662, 665 (D. Conn. 1995), Judge Schiff recognized the significance of the language "shall be applicable to any lien for any obligation or claim *arising on or after said date*." (Emphasis added).

If that legislative body wished to provide immediate relief to debtors at the expense of existing creditors, why would it not have simply provided an effective date and eliminated the second clause of Section 3, or even expressly stated its intent that

existing claims would be subject to the exemption? …

The 2021 amendment simply provided an effective date and eliminated the second clause found in P.A. 93-301 § 3.

As a general rule, "where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because the General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them." Asylum Hill Problem Solving Revitalization Ass'n v. King, 277 Conn. 238, 256-257 (2006).  Had the legislature intended the amendment to apply only to debts incurred after its effective date, it would have been easy to include the same language in its enabling act.

The amendment's remedial purpose is meant to provide additional protection to Connecticut's homeowners, more in line with today's economic climate, as we continue to navigate through a pandemic.  If the Court accepts that the amendment was made with a remedial purpose, it would make no sense to allow the increased homestead amount to apply only to debts incurred after October 1, 2021.

### c. **The Second Circuit Previously Determined an Increase in the New York Homestead Exemption was Retroactive.**

CFCU Cmty. Credit Union v. Hayward, 552 F.3d 253 (2d Cir. 2009) addressed a similar issue when the New York homestead exemption increased from $10,000 to $50,000 through a 2005 amendment. The Second Circuit found that the increased homestead exemption amount applied to debts incurred prior to its effective date. "Neither the statutory language nor its legislative history requires limiting the scope of the

Amendment to debts incurred after the Amendment's effective date. The Contract Clause of the Constitution is likewise not offended by a retroactive application of the Amendment to pre-existing debts. Accordingly, New York debtors who file a bankruptcy petition after the Amendments effective date are entitled to invoke the greater homestead exemption amount of $50,000." Id. at 256-257.

The 2005 amendment at issue did not reference whether it applied to debts incurred prior to its effective date. In its lifetime, New York's homestead amount increased on multiple occasions, all but once without reference to whether the statute applied to debts incurred prior to each effective date. Id. at 261.  The previous amendment in 1977 had explicitly stated it would not have applicability "*for a debt contracted before it takes effect.*" Id. (emphasis in original).

As is the case in Connecticut, New York does not favor retroactive operation of statutes "unless the language expressly or by necessary implication requires it." Id. at 262.  However, remedial legislation should be applied retroactively as, under New York's statutes, "[r]emedial statutes constitute an exception to the general rule that statutes are not to be given a retroactive operation, but only to the extent that they not impair vested rights." Id. quoting N.Y. Stat. Law § 54.

A review of New York's legislative history showed "an intent on the part of the Legislature to adjust the homestead exemption to account for inflation and to bring it in line with current economic conditions."  Id. at 263.  Without language barring the application of the amendment retroactively, and with legislative intent to immediately increase the exemption, the Court could not assume the amendment was meant to only apply prospectively. Id.

In light of the legislative finding that the increased exemption amount was long overdue and that the old amount was unrealistic in today's economy, it would defeat the intent of the Legislature to judicially engraft an anti-retroactivity provision (similar to that found in the 1977 Amendment) onto the statute where none exists. It is well settled that "[t]he Legislature is presumed to be aware of the law in existence at the time of an enactment." *Matter of Amorosi v. S. Colonie Ind. Cent. Sch. Dist.*, 9 N.Y.3d 367, 373, 880 N.E.2d 6, 849 N.Y.S.2d 485 (2007) (quoting *B & F Bldg. Corp. v. Liebig*, 76 N.Y.2d 689, 693, 564 N.E.2d 650, 563 N.Y.S.2d 40 (1990)). If the Legislature intended the Amendment to be prospective only (i.e., not to apply to pre-existing debts) it could easily have carried over the language from the 1977 Amendment. It chose not to do so. Thus, a New York debtor's ability to invoke the increased homestead exemption is determined not by the date the debtor's unsecured contract debt was incurred, but rather, by the date upon which the debtor files his or her bankruptcy petition.

Id. at 26-27.

> **d.    The Second Circuit Also Determined That There Was No Constitutional Issue Applying the Increased Homestead Amount Retroactively.**
>
> > **i.    The Increased Homestead Exemption Did Not Violate the Contracts Clause.**

In In re Morzella, 171 B.R. 485, 487 (Bankr. D. Conn. 1994), Judge Krechevsky

identified the Contracts Clause as partial support for the determination by the Court in

Centerbank v. Associated Risk Servs., Inc., 1994 Conn. Super. LEXIS 335 (Conn. Super.

Feb. 7, 1994), that the 1993 amendment was to be applied only prospectively.

Hayward makes clear that no issue implicating the Contracts Clause exists when

a state is increasing its homestead exemption.

The Contract Clause of the United States Constitution provides that "[n]o State shall . . . pass any . . . Law . . . impairing the Obligation of Contracts." U.S. Const. art. 1, § 10, cl. 1. "Although the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State 'to safeguard the vital interests of its people.'" *Energy Reserves Group, Inc. v. Kan. Power and Light Co.*, 459 U.S. 400, 410, 103 S. Ct. 697, 74 L. Ed. 2d 569 (1983) (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 434, 54 S. Ct. 231, 78 L. Ed. 413 (1934)). The state's police power has been described as "an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, [which] is paramount to any rights under

contracts between individuals." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241, 98 S. Ct. 2716, 57 L. Ed. 2d 727 (1978). Unless the state is a party to the contract, courts generally should defer to "legislative judgment as to the necessity and reasonableness of a particular measure." *Energy Reserves*, 459 U.S. at 412-413, 103 S. Ct. 697 (quoting *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22-23, 97 S. Ct. 1505, 52 L. Ed. 2d 92 (1977)).

The first step in Contract Clause analysis asks "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Energy Reserves*, 459 U.S. at 411 (quoting *Allied Structural Steel*, 438 U.S. at 244). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S. Ct. 1105, 117 L. Ed. 2d 328 (1992). Even if a state law substantially impairs a contract, it will not be deemed unconstitutional so long as it is justified by "a significant and legitimate public purpose . . . such as the remedying of a broad and general social or economic problem." *Energy Reserves*, 459 U.S. at 411-412. This requirement "guarantees that the State is exercising its police power, rather than providing a benefit to special interests." *Id.* at 412. If such a public purpose is demonstrated, the means chosen to accomplish that goal must be "reasonable and necessary." *Sal Tinnerello & Sons, Inc. v. Town of Stonington*, 141 F.3d 46, 54 (2d Cir. 1998) (citing *Energy Reserves*, 459 U.S. at 412-413); *see also Sanitation & Recycling Indus., Inc. v. City of N.Y.*, 107 F.3d 985, 993 (2d Cir. 1997).

Id., 552 F.3d at 266-267.

To determine if a statute substantially impairs a contract right, the Court must examine the extent to which the reasonable expectations under the contract have been disrupted. Id. at 268. While this amendment may have modified the parties' expectations, it did not substantially disrupt the parties' reasonable expectations under the contract. However, even if it was a substantial disruption, the application to pre-enactment debts "serves the significant and legitimate public purpose … of expanding the class of debtors who will be able to keep their homes despite declaring bankruptcy." Id. (citation and internal quotations omitted).

Connecticut's newly increased homestead exemption has not substantially impaired a contractual relationship.  Any creditor extending credit would understand that

homestead exemptions exist under state and federal law and can be amended from time to time. Raetroactive application of Connecticut's increased homestead exemption would not impair any contract right.

### ii.    The Increased Homestead Exemption Did Not Violate the Takings Clause.

Similarly, 1256 Hertel Ave. Assocs., LLC v. Calloway, 761 F.3d 252 (2d Cir. 2014) determined that the increased $50,000 homestead exemption applied to judgment liens perfected before the amendment's effective date and such application did not violate the Takings Clause of the Fifth Amendment.

In Calloway, and unlike Hayward, the creditor reduced its obligation to judgment and then recorded against the debtor's home prior to the 2005 amendment.   That creditor argued that a retroactive application of the 2005 homestead exemption would result in an unconstitutional taking in violation of the Fifth Amendment. Id. at 261.  Any taking at issue would be a regulatory (and not a physical) taking. Id. at 264.

When assessing a taking claim, the relevant inquiry is not whether governmental action has impacted a party's interest, but instead, "the extent to which the challenged governmental action has upset the claimant's investment-backed economic expectations by altering its rights as to a constitutionally protected property interest." Id. at 265-266.

Ultimately, the Calloway Court determined that no such taking took place.

Inherent in [the creditor's] judgment lien was the implied limitation of a homestead exemption that predictably and necessarily must be adjusted from time to time to account for the changing values f the homes it protects. This limitation having been part of [the creditor's] judgment lien from the start, the 2005 Amendment neither effected a total taking of [the creditor's] property nor upset its reasonable investment-backed expectations. Thus, we conclude that the 2005 Amendment's application to pre-enactment judgment liens does not violate the Takings Clause of the Fifth Amendment.

Id. at 267.

There is no challenge to Ms. Cole's use of the increased homestead exemption amount based on the Takings Clause.

> **e.**    **11 U.S.C. § 522(b) Makes Clear that Courts Should Apply State Law Exemptions in Existence on the Petition Date.**

An analogous issue relating to the avoidance of judicial liens supports Ms. Cole's use of the increased homestead exemption available as of her filing date.  The Code's plain language requires the use of State exemptions "applicable on the date of the filing of the petition…."

11 U.S.C. § 522 defines exemptions to which the debtor is entitled:

(b) (1) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection….
   (2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.
   (3) Property listed in this paragraph is –
   (A) subject to subsections (o) and (p), **any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition….**

(Emphasis added).

In In re Betz, 273 B.R. 313 (Bankr. D. Mass. 2002), the Court determined that 11 U.S.C. § 522(c) preempted any State limitation for use of an increased homestead amount against pre-existing liens.

In 2000, the Massachusetts homestead exemption increased from $100,000 to $300,000 but included language which subordinated the increased exemption to any "lien, right or interest" recorded or filed before the amendment's effective date. Id. at 317.

The Betz Court analyzed the interplay between 11 U.S.C. § 522(b), (c) and (f)

before concluding that § 522(b) overrode the State limitation.

"The key to this puzzle lies in the interpretation of § 522(b) and its scope. That is, we must discern the outer limits of a state law's ability to control an exemption's operative characteristics in the bankruptcy universe." <u>Id</u>. at 321 (citation and internal quotations omitted).

While Congress left it to the states to define the category and content of exemptions, § 522(c) and (f) define its operative effect in bankruptcy. <u>Id</u>. at 323. "[S]tate defined exemptions are merely the backdrop upon which federal principles operate to render results consistent with bankruptcy policy (results often contrary to state law)." <u>Id</u>.

> Whether the state excludes a category of debt from exemption protection altogether or whether it carves out an exception for the applicable dollar amount for the same category of debt is an irrelevant distinction given the overarching principle that conflicting state exemption limitations have no effect under the Bankruptcy Code. Either method of carving out exceptions ultimately reduces the debtor's homestead estate because under either method, this Court must first apply the statute's exceptions before determining what property is exempt. Under the Bankruptcy Code, both methods must fail because § 522(b)(2) does not incorporate all of a state's built-in limitations on exemptions. Rather, the state exemption scheme is merely the platform upon which federal policies operate.

> Accordingly, in determining what property is exempt under § 522(b)(2) and (c), this Court must look to the law in effect at the time of the bankruptcy filing notwithstanding the limitations set forth in the Homestead Statute. This is a principle that applies universally throughout § 522, irrespective of whether the exemption statute's exceptions apply to a category of debt as a whole or to the dollar amount of an exemption as applied to a particular category of debt….

> Section 522(c) nowhere provides that preexisting debts or liens receive special protection under the Code. Accordingly, Section 3's subordinating clause conflicts with § 522(c) and has no effect in this bankruptcy proceeding….

<u>Id</u>. at 31-33 (footnote omitted).

Likewise, in <u>In re Depascale</u>, 496 B.R. 860 (Bankr. N.D. Ohio 2013), the Court allowed the debtor to use the increased homestead exemption in place at the time of his

bankruptcy filing for purposes of avoiding liens, despite limitations provided for in related, uncodified law.

In 2008, Ohio increased its homestead exemption from $5,000 to $20,200 and added language allowing for adjustments every three years. Id. at 866. As of April 2010, the Ohio homestead exemption was $21,625. Id.

In 2013, the exemption was amended further to $125,000. The Ohio bill causing such increase included uncodified language that stated that the amendments "shall apply to claims accruing on or after the effective date of this act…. This act is not intended to impair any secured or unsecured creditors' claims that accrue prior to the effective date of this act." Id. at 866-867 quoting H.B. 479, sec. 3.

Notwithstanding the clear language set forth in H.B. 479, the Depascale Court determined that the definitions set forth in 11 U.S.C. § 522 preempted any attempt by the State to exclude liens in effect prior to the effective date of the amendment. Id. at 873. 11 U.S.C. § 522(f)(2)(A) defines impairment with no reference to conflicting state law provisions. Id. As property exemptions are determined as of the petition date, "any contradictory statement of intent does not and cannot supersede the federal definition of impairment contained in § 522(f)." Id.

While the instant case does not involve efforts to void a judicial lien, these cases make clear that the Code trumps State law limitations on applicability and the Code itself requires the use of State exemptions as "applicable on the date of the filing of the petition…."  It would be incongruous to allow a State limitation (if any) on a debtor's use of an amended homestead exemption which runs afoul of the Code's definition of exemptions.

**Conclusion**

A debtor's rights to a claimed exemption are established on the petition date. Chorches v. Xiao (In re Xiao), 592 B.R. 258, 271 (Bankr. D. Conn. 2018). It is reasonable to expect a debtor's exemption rights to be periodically adjusted to reflect the current economic conditions. Betz, 273 B.R. at 326.  It is not unjust to do so, as "every debt is contracted with reference to the rights of the parties thereto under existing exemption laws, and no creditor can reasonably complain if he gets his full share of all that the law, for the time being, places at the disposal of creditors." Id. (citation omitted).

In fact, the federal exemption scheme changes periodically, and far more frequently than State exemption amounts, to reflect the changing economies, without challenge as to which debts the increased amounts reach.

There is no proper basis to require the Connecticut Bankruptcy Courts to perform the onerous task of determining which of a debtor's debts are incurred before or after October 1, 2021 for purposes of allowing a debtor use of the increased homestead exemption.


Respectfully submitted, this 3rd day of January, 2022 at Glastonbury, Connecticut.

DEBTOR,
ELAINE M. COLE


By: /s/ Jenna N. Sternberg_____
Jenna N. Sternberg (ct26645)
Boatman Law LLC
155 Sycamore Street
Glastonbury, CT 06033
(860) 291-9061; FAX (860) 291-9073
jsternberg@boatmanlaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re: | CHAPTER 7 |
| **ELAINE M. COLE** | **CASE NO. 21-21071 (JJT)** |
| **Debtor** | |
| | **JANUARY 3, 2022** |

### CERTIFICATION OF SERVICE

I hereby certify that a copy of the Debtor's Response to Trustee's Objections to Debtor's Claim of Exemption in Real Property was served on the following parties on this 3rd day of January, 2022 as set forth below:

**Via the Court's CM/ECF PACER system:**

Thomas A. Gugliotti on behalf of Creditor Updike, Kelly & Spellacy, P.C.
tgugliotti@uks.com

Elizabeth M. Lacombe on behalf of Creditor TD Bank, N.A.
emlacombe@duanemorris.com

Anthony S. Novak
AnthonySNovak@aol.com, ct07@ecfcbis.com;novaklawofficepc@gmail.com

Aimee Siefert on behalf of Creditor Chelsea Groton Savings Bank
asiefert@brownjacobson.com

U. S. Trustee
USTPRegion02.NH.ECF@USDOJ.GOV

**21-21071 Notice will not be electronically mailed to:**

Block, Janney & Sisley, LLC
12 Roosevelt Avenue
Mystic, CT 06355

Eric M. Janney
Block, Janney & Sisley, LLC
12 Roosevelt Avenue
Mystic, CT 06355

Steven E. Mackey on behalf of U.S. Trustee U. S. Trustee
Office of the U.S. Trustee
The Giaimo Federal Building
150 Court Street, Room 302
New Haven, CT 06510

      /s/ Jenna N. Sternberg
Jenna N. Sternberg (ct26645)
Boatman Law LLC
155 Sycamore Street
Glastonbury, CT 06033
(860) 291-9061; FAX (860) 291-9073
jsternberg@boatmanlaw.com