**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE No. | 21-21071 (JJT) |
| | ) | | |
| ELAINE M. COLE, | ) | CHAPTER | 7 |
|      Debtor. | ) | | |
| | ) | RE: ECF Nos. | 125, 128, 129, 136 |

**MEMORANDUM OF DECISION AND RULINGS ON**
**THE TRUSTEE'S MOTION FOR STAY PENDING APPEAL**
**AND THE DEBTOR'S MOTION TO DISBURSE EXEMPTION PROCEEDS**

> Humans have five basic needs, food, water, shelter, clothing and sleep. The homestead exemption protects one of the most basic human needs: shelter. While legislation cannot fix all problems, it can help to protect the family home and when we protect a basic need, we can focus on other life priorities.[1]

I.   INTRODUCTION

Before this Court are the Debtor's Motion to Disburse Exempt Proceeds (ECF No. 125) and the Trustee's Motion for Stay Pending Appeal (ECF No. 128, the "Trustee's Motion"), along with his Memorandum of Law in Opposition to Motion for Disbursement of Exempt Proceeds and in Support of Motion for Stay Pending Appeal (ECF No. 129, the "Memo"). The aforementioned motions relate to this Court's Memorandum of Decision on the Trustee's Objection to Homestead Exemption dated April 15, 2022 (ECF No. 116, the "Homestead Decision")—which is the subject of the Trustee's appeal to the District Court—that held that the Debtor's claimed primary residence was indeed her homestead for exemption purposes, and that the Debtor was entitled to Connecticut's newly enacted $250,000 homestead exemption.[2] The

---
[1] Sen. Bob Wieckowski & Jenny L. Doling, *The Journey to Fix the California Homestead Exemption,* 36 CAL. BANKR. J. 17, 22 (2022).
[2] *See In re Cole,* Docket No. 3:22-cv-00587-VAB (D. Conn) (the "Appeal").

Debtor's Opposition to the Trustee's Motion argues that the Trustee has simply failed to meet his burden in demonstrating that a stay pending appeal is warranted. ECF No. 136. The Court agrees. This Court further believes that the will and intention of the General Assembly is to implement this fundamental protection of human shelter now.

II. LEGAL STANDARDS FOR OBTAINING A STAY PENDING APPEAL

When considering a stay pending appeal, the Court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. The party seeking a stay pending appeal carries a heavy burden." *In re David X. Manners Co.*, 2018 WL 2325758 at *1 (Bankr. D. Conn. 2018) (citing *Barretta v. Wells Fargo Bank, N.A. (In re Barretta)*, 560 B.R. 630, 632 (D. Conn. 2016)).

    a. <u>Likelihood of Success on the Merits</u>

The Trustee asserts that he has a strong chance of prevailing upon appeal, based on his claims that the Appeal involves cases of first impression as to (1) whether a debtor who has contracted for the sale of her home pre-petition can claim a homestead under Connecticut law and (2) whether the 2021 amendment to the Connecticut homestead exemption is to be applied retroactively. The Trustee indicates that he intends to ask the District Court to certify only the retroactivity issue to the Connecticut Supreme Court.[3]

More specifically, as to the first issue, the Trustee is challenging whether a property can serve as the Debtor's primary residence when the Debtor, pre-petition, has signed a contract to sell that property, signed a lease for a new residence and moved most of her belongings to the

---

[3] A review of the docket in the Appeal confirms that, on June 1, 2022, the Trustee sought only to certify the question of the applicability of Connecticut's newly amended homestead exemption. *See* Appeal, docket entry 12.

new residence. In his Memo, the Trustee argues that, because the terms "occupy" and "primary residence" as used in the Connecticut homestead exemption have not been defined by any Connecticut case, that "there is very little basis to predict how the Connecticut Supreme Court will rule."[4] That argument seemingly disregards the plain meaning and common understanding of those terms to assist the courts in the exercise of statutory construction.

In support of the Trustee's contention that he "has a good chance to prevail" on this issue, he ostensibly relies upon a case from a Florida Bankruptcy Court that stands for the proposition that a debtor's "intended use" of the property should be taken into consideration when determining the true nature of property claimed as exempt. *See* Memo at p.4 (citing *In re Grande*, 106 B.R. 741, 743 (Bankr. M.D. Fla. 1989)). As this Court underscored in its Homestead Decision, and as is discussed further herein, "there is no present requirement for a homeowner in Connecticut to have the *intention* to make her property her permanent residence to utilize her homestead exemption." Homestead Decision at p. 11. Regardless, however, the Debtor here has demonstrated her intention to maintain the property as her primary residence.

With respect to the retroactivity issue, the Trustee argues that, notwithstanding that this Court found the legislative intent as to the applicability of the newly amended homestead exemption to be clear, that the Court erroneously "did not address the critical issue of whether the change to the homestead exemption was substantive and thus requiring prospective application." The Trustee further argues that the Court misunderstood the effect of the repeal of the original homestead exemption, which, the Trustee argues, leaves the original statute in effect until the new one takes effect only against creditors after its effective date, despite the use of the word "repeal."

---

[4] As it now stands, however, it will be the Connecticut District Court that will address this issue.

Under Fed. R. Bankr. P. 4003(c) it is the Trustee's burden to prove, by a preponderance of the evidence, that the Debtor's homestead exemption was not properly claimed. This Court believes that the Trustee's prospect of success on the merits is not reasonably likely or substantial.

> i. The Debtor may claim a homestead in property that she has contracted to sell as of her petition date.

Eligibility for Connecticut's homestead exemption requires a debtor, as of the petition date, to own and occupy the claimed property as their primary residence. *In re Kujan*, 286 B.R. 216, 220 (Bankr. D. Conn. 2002). Homestead rights are to be construed liberally in favor of the debtor, and accordingly, "no mere technicality should defeat the right of exemption, and whenever the claim to an exemption can be brought within the purpose and intent of the statute by a fair and reasonable interpretation, the exemption should be allowed." *Caraglior v. World Sav. & Loan (In re Caraglior)*, 251 B.R. 778, 782–83 (Bankr. D. Conn. 2000). The Homestead Decision found that the Debtor here intended to, and did, in fact, own and occupy the subject property as her primary residence as of the petition date, and the fact that the Debtor had already signed a lease for her next living space does not change the analysis—prudent debtors would make living arrangements for themselves in anticipation of a near-term closing on their home.

In *In re Ward*, 595 B.R. 127 (Bankr. E.D.N.Y. 2018), the court rejected the Trustee's argument that the occupancy necessary to declare a homestead requires an intent by the debtor to permanently reside at the property. Instead, it recognized that "bankruptcy courts in this circuit have been steadfast in holding that a debtor is entitled to the homestead exemption despite having entered into a prepetition contract of sale so long as the debtor owned and occupied the homestead on the petition date." *Id.* at 138 (citations omitted). "There is no reason why this [Debtor's] post-petition voluntary sale should be any different from any other sale of a debtor's

residential real property conducted during the course of a bankruptcy proceeding. The [d]ebtor's fresh start should not be penalized as a result of the existence of a pre-petition contract negotiated on an arms-length basis where the [d]ebtor still owned and occupied the homestead on the [p]etition [d]ate." *Id.* (citation omitted).

The *Ward* court found instructive these well-reasoned and thoughtful cases on the issue of whether a debtor may claim a homestead exemption when she holds a prepetition contract to sell her property that has not closed at the time of the bankruptcy filing. *Id.* at 141. "The existence of a prepetition contract of sale is immaterial if the debtor still owns and resides at her principal residence on the petition date, the very basis for a homestead exemption in New York. The debtor's 'clear intent to sell, in the future, without more, cannot establish a present abandonment of her homestead….' " *Id*. (citation and internal quotations omitted).

In *In re Bellafiore*, 492 B.R. 109 (Bankr. E.D.N.Y. 2013), prior to filing for bankruptcy protection, the debtor entered into an arms-length contract to sell his homestead property. The debtor undisputedly owned and occupied the subject property as his primary residence as of the petition date, but the trustee nonetheless argued that the debtor's eligibility for New York's homestead exemption required the debtor's physical presence at the property be coupled with the intent to reside there permanently. *Id.* at 113. The *Bellafiore* court rejected the trustee's argument, underscoring that nothing in New York's homestead exemption statute suggested that the exemption was "to be conditioned on an intent for long term residency." *Id.* at 114. The court found that, notwithstanding the existence of a pre-petition contract for sale of the debtor's residence, the debtor still owned and occupied the homestead on the petition date and the voluntary sale of the property took place post-petition—accordingly, the debtor was entitled to his homestead exemption. *Id.* at 114, 116. "The fact that the Debtor intended to vacate and sell

5

the Real Property sometime after the Petition Date does not change the fact that the Real Property was his permanent residence and his homestead on the Petition Date" for exemption purposes. *Id.* at 114.

Shortly before a scheduled foreclosure sale, and before filing for Chapter 7 protection, the debtor in *In re Apergis*, 539 B.R. 24 (Bankr. E.D.N.Y. 2015) moved back into her claimed homestead after vacating the property and living elsewhere for the preceding two years. Certain creditors objected to the debtor's homestead exemption, arguing that the debtor could not evidence her intent to reside permanently at the property because she was aware of the impending foreclosure sale. *Id.* at 30. The court again rejected the argument that a demonstrated "intent" was necessary to claim a homestead exemption, stating that, "[p]rovided that a debtor's actual occupancy on the petition date is consistent with primary residency, her knowledge that the property is to be sold post-petition is not dispositive of her intent to reside at the premises for the purposes of the homestead analysis." *Id.* Although the court found that the creditors "demonstrated that the Debtor's occupation of the Property was temporary in light of the impending sale," their objection was overruled because "they failed to meet their burden of establishing that the Debtor did not actually occupy the Property as her principal residence on the Petition Date." *Id.*

Similarly, in *Klein v. Anderson (In re Anderson)*, 613 B.R. 279 (B.A.P. 9th Cir. 2020), the court overruled the trustee's objection to the debtor's homestead exemption where the debtor lived at her homestead on her petition date, but moved out shortly thereafter. Under Washington law, a debtor's right to claim an exemption is fixed as of the petition date, referred to as the "snapshot rule." *Id.* at 282. According to the trustee, the fact that the debtor moved out shortly after filing for bankruptcy showed that she lacked a present intent to use the property as her

homestead for exemption purposes. *Id.* The court found the fact that the debtor resided at her property on the petition date was enough to entitle the debtor to her homestead exemption, regardless of what her future plans were. *Id.* at 284. The court found that the

> Debtor resided in the Property as her principal residence on the petition date, and under Washington exemption law, this was sufficient to confer automatic protection of the homestead. As such, the fact that she moved out of the Property shortly after filing and failed to return is simply irrelevant to the determination of whether she is entitled to claim the homestead exemption in her chapter 7 case.

*Id.*

Connecticut also has no present requirement for a debtor to intend to remain at her home long term in order to utilize her homestead exemption. The Court sees no reason for this Debtor to be penalized for her foresight to plan for appropriate, assisted living arrangements after the imminent sale of her home. There is no important issue of first impression as to the construction of commonly understood terms in the statute to reasonably justify Supreme Court review. This Court's decision turned on the proof in the record. Simply, the Trustee's proof, as delineated in the Court's Homestead Decision, failed to rebut the presumption in the Debtor's favor, which was only enhanced by the totality of the facts and circumstances adduced at trial showing her continued nexus, use and occupancy of the property as a primary residence. *See* Homestead Decision at pp. 10–13.

While this Court found that, although the Debtor did, in fact, sign a listing agreement for the sale of her residence, enter into a sales contract, and sign a lease at an assisted living facility—all pre-petition—she nonetheless "continued to sleep at the Property on a box spring and mattress through, at least, the Petition Date"; her "medications and other personal belongings also remained at the Property through the Petition Date and she continued to cook and eat meals

7

at the Property during that time." Further, she "did not inform [the assisted living facility] of her intent to begin living in the Apartment until sometime around November 23 or 24, 2021" (post-petition); and, "[u]ntil the eve of the closing [which took place on December 23, 2021], the Debtor still had personal belongings at the Property and considered, treated, owned, and occupied the Property as her home and primary residence." *Id.* at pp. 6–7. The significant weight of that evidence was determinative for the Court, particularly in the absence of controverting evidence.

The Court finds that the Trustee is not reasonably likely to prevail on this issue, which will be reviewed on appeal to assess if this Court's reliance on the presumptive validity of the Debtor's homestead exemption and the aforesaid facts was clearly erroneous. *In re Cacioli*, 332 B.R. 514, 517 (D. Conn. 2005); *FirstLight Hydro Generating Co. v. Stewart*, 328 Conn. 668, 677–78 (2018).

        ii. Connecticut's Amended Homestead Exemption is applicable to all cases filed after the statute's Effective Date.

The Trustee argues that, in the Homestead Decision, this Court "did not address the critical issue of whether the change to the homestead exemption was substantive and thus require[es] prospective application." To the contrary, this Court did indeed make the subordinate findings that would support an express ruling that the amendment was procedural (affecting a remedy), thus supporting a retroactive application. *See* Homestead Decision at pp.23–24.[5] Critically, however, such a finding was necessary only in the absence of any clear expression of legislative intent as to the statute's applicability. *See* Homestead Decision at p. 14 (citing *Davis*

---

[5] The Homestead Decision states that "the Amended Homestead Exemption leaves the preexisting exemption scheme intact and merely changes the amount of the protection available to a debtor. The 2021 Act did not create the right of a Connecticut homeowner to assert a homestead exemption, nor did it alter the grounds upon which a debtor can assert a homestead exemption; it merely expanded the existing amount of equity in a homestead that can be protected."

*v. Forman Sch.*, 54 Conn. App. 841, 853–54 (1999); *State v. Nathaniel S.*, 323 Conn. 290, 295 (2016)).

As is underscored in the Homestead Decision, this Court principally relied on recognized principles of statutory construction and the unambiguous and plain language of the General Assembly on the amended homestead exemption, particularly in light of its history of judicial decisions. This Court found significant guidance provided by previous courts that grappled with the applicability of Connecticut's original homestead exemption. In the view of this Court, the amended homestead exemption was intended by the General Assembly to apply retroactively[6] and any construction to the contrary would only lead to an absurd, unreasonable, and unworkable result. *See Jones v. Mansfied Training School,* 22 Conn. 721, 726 (1992) (if two constructions of a statute are possible, courts will use the reasonable construction over the unreasonable one). In the face of the "legislature's presumptively intentional elimination of limiting language" used in the original homestead exemption, this Court refrained from reading an anti-retroactivity provision where one no longer existed. *See Osuna v. Gov. Emp. Inc. Co.*, 2014 WL 1515563 at *8 (E.D.N.Y. 2014).

As a general rule, "where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant *to show that a different intention existed*. . . . That tenet of statutory construction is well-grounded because the General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them." *Asylum Hill Problem Solving Revitalization Ass'n v. King*, 277 Conn. 238 256–57 (2006) (emphasis added);

---

[6] For purposes of the Homestead Decision, the Court defined the term "retroactive" to refer to the application of the 2021 Act as against any claim arising before October 1, 2021, for those debtors who filed for bankruptcy protection after the 2021 Act's effective date.

9

*see also McKinley v. Musshorn*, 185 Conn. 616, 623 (1981) (the legislature is presumed to have acted in light of existing relevant statutes and with the intent of creating a consistent body of law).

Having found that the legislative intent was clear, based both on the plain language of the amended homestead exemption and the removal of previous language included in the original homestead exemption which expressly limited the statute's applicability, this Court concluded that it need not expressly address the issue of whether the amended homestead exemption was procedural or substantive in nature. Nonetheless, as the amendment relates to a remedy as distinguished from a right or obligation, the amendment is procedural in nature. *See Davis v. Forman Sch.*, 54 Conn. App. 841, 854–55 (1999).

The Trustee also argues that, in finding that the amended homestead exemption shall be applied retroactively, this Court misunderstood the effect of the repeal of the original homestead exemption. In his Memo, the Trustee argues that "[a]s the Connecticut Supreme Court noted in *Nash v. Yap*, 247 Conn. 638 (1999), the repeal and replacement of a statute with prospective effect leaves the original statute in effect until the new one takes effect despite the use of the word 'repeal.'"

*Nash* involved the enactment of two tort reform statutes known as Tort Reform I, effective October 1, 1986 and which made fundamental changes in the extent of damages that a tortfeasor must pay, and Tort Reform II, effective October 1, 1987 and which "amended Tort Reform I to respond to criticisms about some provisions of the earlier legislation." *Id.* at 93. By its terms, Tort Reform I applied to injuries "*accruing* on or after" the act's effective date of October 1, 1986, whereas the legislature's revisions to Tort Reform II made the statute applicable to injuries "*occurring* on or after October 1, 1987." *Id.* at 96. The principal issue

10

before the court was "whether the liability apportionment provisions of either of those acts applie[d] to tortious conduct that occurred between October 1, 1986, and October 1, 1987, but was not discovered until after October 1, 1987." *Id.* at 93.

In addressing that issue, the *Nash* court considered the applicability of the two statutes and whether "Tort Reform II was intended to repeal rather than to amend Tort Reform I." *Id.* at 96. Although the plaintiff argued for repealer, the Supreme Court stated that it previously "decided that our legislative practices *usually* indicate that the legislature's nomenclature of 'repeal' manifests the legislature's intent to modify and to amend prior legislation, and not to extinguish it ab initio." *Id.* (emphasis added). Based on those general practices, the *Nash* court found that in enacting Tort Reform II, the General Assembly "can be presumed to have intended to correct newly discovered flaws without having intended thereby to repeal the earlier enactment." *Id.* at 96–97. Accordingly, the Supreme Court held that the "provisions in Tort Reform I that deal with the apportionment of liability, which were not amended by Tort Reform II, continue[d], therefore, to have operative force." *Id.* at 97.

In rejecting the plaintiff's argument for repealer, the *Nash* court noted that the "plaintiff's proposed construction would be inconsistent with the legislature's purpose in enacting tort reform to apply to all injuries 'accruing' after October 1, 1986 to the present." *Id.* Further, the court found that *implied* repeal will not be presumed where "the old and new statutes can coexist peaceably." *Id.*

Here, in rejecting the Trustee's argument for prospective application, this Court's Homestead Decision noted that the Trustee's interpretation of the amended exemption statute would be inconsistent with, and frustrate, the legislature's purpose of the newly amended homestead exemption. Homestead Decision at p. 19. What's more, the Homestead Decision

underscores that the original and amended homestead statutes cannot coexist peaceably. *See id.* at pp. 19–20. Based upon the totality of the facts and circumstances regarding the judicial history of Connecticut's homestead exemption statute, the prospective construction as urged by the Trustee would defeat the efficacy of the statute, creating schizophrenic scrutiny of exemptions for years to come. Courts "must avoid a consequence which fails to attain a rational and sensible result which bears most directly on the [purpose] which the legislature sought to obtain." *Peck v. Jacquemin*, 196 Conn. 53, 63–64 (1985).

Critically, however, neither the Trustee nor the Debtor raised any argument as to the effect that the explicit repeal of Connecticut's original homestead exemption had on the applicability of the amended homestead exemption, and the Court's conclusions in the Homestead Decision do not rest entirely on the fact that the original exemption was explicitly repealed. Rather, in looking to the legislative intent and purpose, the Court determined that the fact that the original exemption was explicitly repealed further evidenced the General Assembly's will and intention to provide immediate relief to debtors by applying the amended homestead exemption to obligations in existence prior to its effective date (in contrast to its original version).

The Trustee's arguments here simply failed to make a convincing showing that he is likely to succeed on the merits of this issue on appeal.

> iii. Under these circumstances, certification by the Connecticut Supreme Court is highly uncertain, and even if granted, the issues raised may not be expeditiously addressed to the prejudice of the public and innumerable debtors.

Pursuant to Conn. Gen. Stat. § 51-199b:

> (d) The Supreme Court may answer a question of law certified to it by a court of the United States or by the highest court of another state or of a tribe, if the answer may be determinative of an issue in

> pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state

"Whether we ask a state court to resolve unsettled legal questions will depend on, among other factors: '(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state, and (3) the capacity of certification to resolve the litigation.'" *Runner v. N.Y. Stock Exch., Inc.*, 568 F.3d 383, 388 (2d Cir. 2009). "[W]e do not certify a question of unsettled state law merely because state law permits it." *Id.* Rather, "[w]e resort to certification sparingly, mindful that it is our job to predict how the [Connecticut Supreme Court] would decide the issues before us." *Highland Capital Mgmt., LP v. Schneider*, 460 F.3d 308, 316 (2d Cir. 2006) (citation omitted).

The first issue asserted by the Trustee involves whether a house under contract for sale can appropriately be a debtor's homestead. The Trustee's position on that issue conveniently ignores a presumption and unrebutted factual record supportive of the Debtor's claim of primary residence. The Trustee has represented that he "will not" seek certification of this threshold issue to the Supreme Court. That approach may likely be fatal to the Trustee's efforts to secure timely Connecticut Supreme Court review, as a separation of this predicate factual issue from the retroactivity issue will:

1. increase the delays and complexity associated with the resolution of these matters in two appellate proceedings; and

2. remove from the Supreme Court an issue upon which there must be (as a matter of ripeness) a predicate factual finding on the claimed homestead in order for the Supreme Court to address the retroactivity effect of the statute. *See* Homestead Decision at p. 2.

The second issue asserted by the Trustee is based on the temporal reach of the amended homestead exemption.[7] As there is a controlling statute on this point, Conn. Gen. Stat. § 52-352b, with any alleged lack of clarity resolved by application of established rules of statutory construction, certification of this issue is not warranted. The law is not unsettled as to whether the newly amended homestead statute can be implemented when the General Assembly's intention is manifest or where a statute can be appropriately characterized as procedural as opposed to substantive. As previously discussed herein, in addition to its main findings and conclusions, this Court made the subordinate findings which would alternately support an express holding that the amendment was procedural (as merely affecting a remedy rather than a substantive right), despite contentions to the contrary. Appropriately, whether this Court is relying on a procedural characterization or the clear intent of the General Assembly, retroactive application of this statute is fully supportable.[8] The Trustee has not made a sufficient showing that he is likely to succeed on the merits of his appeals.

b. <u>Irreparable Injury</u>

According to the Trustee, there will be harm to the Chapter 7 estate, as without a stay, nothing will constrain the Debtor from spending the exempt proceeds once disbursed to her.

> The irreparable harm element requires a showing of probable irreparable harm that is neither remote nor speculative, but actual and imminent. If the movant cannot demonstrate a substantial possibility of success on the merits, he cannot be irreparably harmed if no stay is granted because any loss of rights is inevitable and is not an irreparable harm that would be caused by the denial of a stay.

---

[7] The Court in *CFCU Cmty. Credit Union v. Hayward*, 552 F.3d 253 (2d Cir. 2009) declined to exercise its discretionary authority to certify to the New York Court of Appeals the question of whether the 2005 amendment to its homestead exemption applied to pre-existing debts, as that question "is easily resolved using well-established principles of New York law that counsel courts in the task of determining the reach of the statute." *Id.* at 266. Further, such certification would not resolve the Constitutional challenge raised, as any determination by New York's high court on the Constitutional challenge would not be binding on the Second Circuit. *Id.*

[8] The Court notes that in the case of *Napolitano v. Faherty (In re Faherty)*, 2022 WL 1191256 (Bankr. D. Conn. 2022), Chief Judge Nevins adopted this Court's legal reasoning and conclusions set forth at pages 13 through 24 of the Homestead Decision as to the applicability of Connecticut's amended homestead exemption.

*David X. Manners,* 2018 WL at *3 (internal citations and quotations omitted).

Without a requisite demonstration by the Trustee of likely success on the merits, he nonetheless wants to stay efforts of an 81-year-old woman, with limited financial resources, and in fragile health, now living in an assisted living facility from garnering her homestead proceeds. This Court will not condone that delay, prejudice, or inequity, merely because of the Trustee's fears of the prospect of dissipation of those funds where there is no showing of a strong possibility of success.

    c. <u>Injury to Debtors and Others</u>

The Debtor filed her bankruptcy case seeking a fresh start, her exemptions, and a discharge. The instant Appeal (potentially to two separate courts), and any subsequent appeal(s) and decision(s) will likely be a lengthy process—it very well could take months, if not years, before it is concluded. The Debtor is greatly harmed by the enduring restricted access to her exempt funds, as any such delay in receiving funds will impact Ms. Cole's ability to address her present needs in her lifetime. *See Leroy v. Hume*, 563 F.Supp.3d 22, 30–31 (E.D.N.Y. 2021) (finding harm to the plaintiffs substantial where plaintiff has significant medical issues requiring constant care now and determining the risk of postponed compensation significant enough to weigh against issuing a stay). The prospect that a diminished recovery by unsecured creditors of the bankruptcy estate "may" be the ultimate consequence of this Court's declining to issue a stay, alone, does not decidedly tip the balance in favor of the stay. Litigants are not assured financial recoveries merely because they are engaged in a legal contest. Further, other debtors, under these circumstances, should not suffer a stay of the Homestead Decision while endeavoring to address their financial distress in or out of bankruptcy proceedings.

      d. <u>Public Interest in Granting a Stay</u>

As explained in *In re Cusson*, 2008 WL 594456 at *4 (Bankr. D. Vt. Feb. 22, 2008):

> Many cases have found that granting a stay frustrates the operation of the Code, and thus the public interest. *See In re Richmond Metal Finishers, Inc.*, 36 B.R. 270, 273 (Bankr. E.D. Va. 1984) ("If there is a public interest in this matter, it is seeing that the purposes and policies of the Bankruptcy Code are not frustrated, particularly the underlying policy of bankruptcy law to help reorganize debtors and provide a 'fresh start.' In this regard any 'public interest' weighs against granting the stay.").

Ms. Cole is entitled to, and deserves, her fresh start. The public, including countless debtors in bankruptcy, contemplating bankruptcy, or merely seeking to protect their exempt interests in a primary residence from creditors, deserve clarity in the decisional law relating to the earmarks of a homestead and the current applicability of Conn. Gen. Stat. § 52-352b(21). Undue and unjustifiable delays in the implementation of the effectiveness of this exemption statute frustrate the General Assembly's remedial objectives and fail to recognize the imperative need of the State to enhance the homestead exemption in the face of the financial challenges to its citizens and homeowners in the current economy. Other states have similarly recognized this basic and compelling need.

Thousands of cases in State and Federal Court, in process or filed in the near term, will raise and address the issues determined by this Court in its Homestead Decision (and adopted by Chief Judge Nevins in the case of *In re Faherty*, 2022 WL 1191256 (Bankr. D. Conn. 2022), currently also on appeal). The precedent and principles relied upon by these Bankruptcy Courts in the formulation of their decisions are well-established, even though the current exemption statute has not had final scrutiny in our respected appellate process.

There are many laws, relied upon, and the subject of conflicting lower court decisions, that have not yet garnered final review by our highest courts. We do not await Supreme Court review before those laws are implemented. To otherwise stay the Homestead Decision and the effectiveness of this amended homestead exemption critical to all debtors, based upon a weak showing of probable success, is plainly a disservice to the public, debtors, and the bankruptcy process. A stay can only stall bankruptcy cases, impair the fresh starts of debtors, and frustrate the General Assembly's objectives and public policy, while the Trustee travels an appellate process that he is unlikely to prevail in.

III.   CONCLUSION

Reviewing the standards for a stay and the totality of the facts and circumstances herein, the Court hereby DENIES the Trustee's Motion for Stay of its Homestead Decision pending the appeal of Ms. Cole's full $250,000 homestead exemption to either the District Court and/or the Connecticut Supreme Court. Accordingly, the Court further GRANTS the Debtor's Motion to Disburse and directs the Chapter 7 Trustee to deliver to her the balance of her exemption, above the $75,000 already disbursed, within 21 days hereof.

**IT IS SO ORDERED** at Hartford, Connecticut this 17th day of June 2022.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut